Margaret WILLIAMS

v.

Kenneth S. APFEL, Commissioner, Social Security Admin.

Civil Action No. 98–3039.

United States District Court, E.D. Pennsylvania.

March 30, 2000.

Sharon Gornstein, Leventhal and Sutton, Langhorne, PA, for plaintiff.

Patricia M. Smith, Assistant U.S. Attorney's Office of General Counsel, Region II, Philadelphia, PA, Rafael Melendez, Social Security Administration, Philadelphia, PA, William B. Reeser, Social Security Administration, Office of General Cousel, Region III, Philadelphia, PA, for defendant.

### MEMORANDUM

POLLACK, District Judge.

### I. Introduction:

Margaret Williams, plaintiff, has appealed the judgment of an Administrative Law Judge ("ALJ") denying her application for social security and disability benefits. The ALJ found that Ms. Williams' medical problems were not so severe that the problems prevented her from working in the national economy. This case was referred to United States Magistrate Judge Faith M. Angell for Report and Recommendation ("R. & R."). Judge Angell has recommended that this court affirm the ALJ's decision. It is this court's opinion that the ALJ's decision lacked substantial evidence. Accordingly, this case will be remanded to the ALJ for proper consideration of the evidence.

### II. Factual History:

Ms. Williams alleges that she has been disabled since February 10, 1995 due to pain resulting from a motor vehicle accident on that day. Ms. Williams alleges that a combination of lifelong learning disabilities, fatigue, and depression also contribute to her disabilities. She claims that her fatigue and depression are the result of Hepatitis C. Due to the combination of disabilities, Ms. Williams argues that she is incapable of working and qualifies to receive social security disability and supplemental income.

Ms. Williams is a 42–year–old woman with a limited education. Ms. Williams worked as a meat packer from 1989–1990 and for four months in 1992. *See* Transcript ("Tr."), at 31–32, 155. She was also employed by McDonald's restaurant and a travel agency. *See* Tr., at 145, 30–31, 356–59. According to the Commissioner's vocational expert, Bruce Martin, Ms. Williams' past relevant work was unskilled and involved medium exertion. *See* Tr., at 62–66.

Due to Ms. Williams' mental and physical conditions stemming from Hepatitis C

and her car accident, she has seen a number of doctors, professionals, and counselors. Following a referral from the Office of Vocational Rehabilitation, Ms. Williams underwent extensive neuropsychological testing by Dr. Mark J. Chelder[1] in January of 1994. *See* Tr., at 210. Dr. Chelder concluded that Ms. Williams had a full scale IQ of 84, which falls within the low average range of intellectual functioning. *See* Tr., at 212–14. Additionally, Ms. Williams' score on the Weschsler Memory Scale–Revised ("WMS–R") indicated that her general memory skills were "severely impaired." Tr., at 212–214. Dr. Chelder diagnosed Ms. Williams with Organic Mental Disorder, NOS and Developmental Expressive Language Disorder. *See* Tr., at 218.

On February 10, 1995, Ms. Williams was involved in a car accident. *See* Tr., at 30–31, 40, 373–84. She suffered from a cervical and lumbar strain. *See* Tr., at 246–52. Approximately two weeks after the accident, physicians took a magnetic resonance image ("MRI") of her cervical spine. *See* Tr., at 330. The MRI revealed abnormalities in her cervical spine due to a straightening of the normal cervical lordotic curve. *See* Tr., at 330. There was no evidence, however, of a disc herniation, or spinal stenosis. *See* Tr., at 330. The MRI of her lumbar spine was normal. *See* Tr., at 330. In March of 1995, Dr. Brian Kelly,[2] examined Ms. Williams for her complaints of neck and lower back pain. *See* Tr., at 253–54. Dr. Kelly concluded that Ms. Williams had normal strength, reflexes, and sensa-

tion in her upper and lower extremities. *See* Tr., at 253.

In the spring of 1994, Dr. Elliot Frank[3] diagnosed Ms. Williams with Hepatitis C, which was later confirmed by a liver biopsy. *See* Tr., at 232–33, 236, 238. In January of 1995, Dr. Frank recommended Interferon therapy[4] because Ms. Williams symptoms of fatigue, myalgia, and lack of energy worsened. *See* Tr., at 229–30. She underwent a six-month course of Interferon therapy from May 1995 until October 1995. *See* Tr., at 224, 226. Following a few months of improved energy level, Ms. Williams' fatigue returned and remained throughout the remainder of the Interferon therapy. *See* Tr., at 36, 50. After the completion of Interferon therapy, Dr. Frank recommended that Ms. Williams see her general physician for an anti-depressant because she had "all the earmarks of vegetative depression." Tr., at 224. Additionally, Dr. Frank recommended that Ms. Williams begin psychiatric counseling. *See* Tr., at 224.

In June of 1996, Dr. Frank noted that Ms. Williams was doing "reasonably well, with good energy level." Tr., at 281. Although Dr. Frank noted that Ms. Williams had clinically improved, he concluded that there was still evidence of chronic liver disease. *See* Tr., at 281. In September of 1996, consequently, Dr. Frank recommended that Ms. Williams undergo retreatment with an experimental combination of Interferon and Ribavirin[5] because her condition had taken a turn for the worse. *See* Tr., at 332. Dr. Jerome M. Burke,[6] a gastroenterologist, agreed that

---

1. Dr. Mark J. Chelder, Ph.D., is a Licensed Clinical Psychologist, Certified School Psychologist, and Neuropsychologist. The Office of Vocational Rehabilitation referred Ms. Williams to Dr. Chelder for a neuropsychological evaluation.

2. Dr. Brian Kelly, M.D., is an Instructor of Neurology at Jefferson Medical College and a physician at Neurology and Neurophysiology Associates, P.C. He performed a comprehensive neurological evaluation on Ms. Williams.

3. Dr. Elliott B. Frank, D.O., is a physician at Gastroenterologists, Limited, and was Ms. Williams' treating physician for Hepatitis C.

4. Interferon therapy is a course of drug treatment for patients with Hepatitis C.

5. Ribavirin is a drug given to patients with Hepatitis C.

6. Dr. Jerome M. Burke, M.D., is a gastroenterologist with Bux–Mont Gastroenterology Associates, P.C. Dr. Burke performed an evaluation of Ms. Williams' hepatitis C.

Ms. Williams should undergo Interferon retreatment for a period of twelve months, provided that Ms. Williams could tolerate the therapy. *See* Tr., at 422.

Pursuant to the advice of Dr. Frank, Ms. Williams began psychiatric counseling in November 1996 for her depression, a common side effect of the Interferon therapy. *See* Tr., at 224. Ms. Williams' psychiatric counselor, Susan Hansen,[7] reported that Ms. Williams was experiencing depression, low self-esteem, and difficulty concentrating. *See* Tr., at 405. Ms. Hansen also completed an assessment of Ms. Williams' ability to perform work-related activities. Ms. Hansen found that Ms. Williams had marked impairments [8] in her abilities to: (1) complete a normal workday, (2) perform routine tasks on a regular, reliable basis without frequent absences, (3) maintain continuous performance to complete a task, (4) perform routine tasks on a sustained basis, and (5) perform routine tasks on a productive basis as expected by most employers. *See* Tr., at 407–10. Moreover, Ms. Hansen found that Ms. Williams would have moderate [9] difficulties in her ability to: (1) function independently on the job, (2) concentrate and attend to a task over an 8–hour period, and (3) perform at a consistent pace without an unreasonable number and length of rest periods. *See* Tr., at 407–10.

Ms. Sharon Shaw,[10] a program coordinator for a vocational guidance program, also evaluated Ms. Williams' ability to work. During a three week vocational training workshop, Ms. Shaw noted that Ms. Williams required complete silence and/or substantial help in completing projects as-

signed to her. *See* Tr., at 312. Ms. Shaw concluded that Ms. Williams would not benefit from vocational training because of a combination of her learning disabilities and medical problems. *See* Tr., at 312.

### III. Procedural History:

On October 26, 1994, Ms. Williams filed an application for disability insurance benefits and supplemental security income benefits alleging an inability to work as of May 30, 1993 due to Hepatitis C and learning disabilities. *See* Tr., at 78–81. The onset date was later amended to February 10, 1995, the date of her auto accident. Ms. Williams' request was denied initially and then again on reconsideration. *See* Tr. at 84–86. On August 7, 1995, Ms. Williams filed a timely request for appeal. *See* Tr., at 129–30. On November 10, 1996, a hearing was held before the ALJ. *See* Tr., at 11–20. Concluding that Ms. Williams has the capacity to work, despite medical impairments, the ALJ denied her request for benefits. *See* Tr., at 11–20. The Appeals Council later affirmed the ALJ's decision. *See* Tr., at 5–6. Consequently, the decision now stands as the final decision of the defendant, Commissioner William Apfel.

Following the Appeals Council's decision, Ms. Williams appealed the decision to the United States District Court for the Eastern District of Pennsylvania. Both parties filed motions for summary judgment. The case was referred to United States Magistrate Judge Faith M. Angell for Report and Recommendation ("R. & R."). Judge Angell recommended that Ms. Williams' motion for summary judg-

---

7. Ms. Susan Hansen, LSW, is a licensed social worker with the Penn Foundation.

8. On the Social Security form assessment completed by Susan Hansen, "marked impairment" is defined as an impairment which seriously affects the claimant's ability to function independently, appropriately, and effectively. *See* Tr. at 407. The scale is no impairment, mild impairment, moderate impairment, marked impairment, and extreme impairment.

9. "Moderate impairment" is defined as an impairment which affects but does not preclude ability to function. *See* Tr. at 407.

10. Ms. Sharon Shaw is the program coordinator of the New Choices vocational guidance workshop at the Bucks County Community College.

ment be denied and that the Commissioner's motion for summary judgment · be granted. Ms. Williams filed objections to the R. & R. The Commissioner then filed responses to the plaintiff's objections.

## IV.  Legal Standard:

In order to establish a disability under the Social Security Act, a claimant must prove that there is a "medically determinable basis for an impairment that prevents him[/her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d. Cir.1987); 42 U.S.C. § 423(d)(1)(West 1992). The Commissioner has developed a five-step sequential evaluation process for determining whether a claimant is under such a disability. *See* 20 C.F.R. § 404.1520(a)-(f) (1995). The first step involves a determination of whether or not an individual is working. An individual who is working will not be found to be disabled regardless of medical findings. *See* 20 C.F.R. § 404.1520(b). The second step involves a determination of whether an individual has an impairment which limits the individual's ability to work. The individual must have an impairment which meets the required duration and which significantly limits the claimant's ability to work. *See* 20 C.F.R. § 404.1520(c). The third step involves a determination of whether the claimant has an impairment or combination of impairments which meet or equal a listed impairment. *See* 20 C.F.R. § 404.1520(d). If the claimant has an impairment which qualifies as a listed impairment, the individual will be considered disabled and entitled to benefits. If an impairment qualifies as a listed impairment, there is no need to consider the last two steps in the sequential evaluation process. The fourth step involves a determination of whether an individual is capable of performing past relevant work. If an individual can perform past relevant work, the individual will not be considered disabled. *See* 20 C.F.R. § 404.1520(e). The last step involves a determination of whether an individual is capable of performing other work in the national economy. If an individual has the capacity to perform other work in the national economy, the individual will not be considered disabled. *See* 20 C.F.R. § 404.1520(f).

The claimant has the initial burden of proving a prima facie case of disability (the first four steps in the sequential evaluation). *See Ferguson v. Schweiker*, 765 F.2d 31, 35 (3d. Cir.1985). The first four steps are not at issue in this case. The ALJ determined that Ms. Williams had not engaged in substantial gainful activity since May 30, 1993. Additionally, the ALJ determined that Ms. Williams' impairments are severe. Because Ms. Williams' impairments do not meet or equal a listed impairment, it is necessary to determine whether she is capable of performing past relevant work or other work in the national economy. The ALJ concluded that Ms. Williams could not perform her prior relevant work because her prior work had a residual functional capacity at the medium level. Thus, the issue in this case concerns step five: whether the claimant is capable of performing other work in the national economy. Once an ALJ is satisfied that a claimant has demonstrated that she is unable to engage in past relevant work, the burden shifts to the Commissioner to establish that other work exists in the national economy for the claimant. *See Kangas*, 823 F.2d at 777.

## V.  Discussion:

### A.  Magistrate Judge Angell's Report and Recommendation:

Following affirmance by the Appeals Council, acting for the Commissioner, Ms. Williams sought review by this court. In her motion for summary judgment, Ms. Williams argued that the ALJ erred by not discussing the opinion of the claimant's treating therapist that the claimant was disabled. *See* Plaintiff's Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Summary Judg-

ment"), at 11. Ms. Williams also argued that the ALJ ignored the opinion of the state agency psychologist that Ms. Williams was unable to sustain employment. *See id.* at 14. Finally, Ms. Williams argued that the ALJ erroneously discredited her subjective complaints of pain without contradictory medical evidence. *See id.* at 10.

The defendant Commissioner also moved for summary judgment. In contrast to Ms. Williams' arguments, the Commissioner argued that substantial evidence supports the Commissioner's Decision that Ms. Williams could perform simple, low stress, light work. *See* Defendant's Brief in Support of Defendant's Motion for Summary Judgment ("Defendant's Summary Judgment"), at 9.

Magistrate Judge Angell then submitted her R. & R. In it, Judge Angell reiterated Ms. Williams' argument that the ALJ did not give full weight to the evidence regarding Ms. Williams' pain, fatigue, and depression. *See* R. & R., at 7. Judge Angell determined that the ALJ set out a factual basis for each finding by analyzing and providing explanations for disregarding evidence in the record. *See id.* at 9. She then concluded that there was substantial evidence in the record to support the ALJ's determination.

### B. Claimant's objections to the Report and Recommendation:

In response to the R. & R., Ms. Williams offers three objections. First, Ms. Williams argues that the Magistrate Judge failed to recognize that the ALJ erred in ignoring a relevant, probative report from Ms. Williams' treating social worker. *See* Plaintiff's Objections to the Magistrate's Report and Recommendation ("Plaintiff's Objections"), at 4. Second, Ms. Williams argues that the Magistrate Judge failed to recognize that the ALJ erred in ignoring the medical conclusion of Dr. Thomas Fink, the state agency physician. *See id.* at 4 n. 4. Third, Ms. Williams argues that the Magistrate Judge erred in sustaining

the ALJ's refusal to credit Ms. Williams' subjective complaints of pain. *See id.* at 4.

### C. Standard of Review:

■ The standard of review with respect to findings of fact by the Commissioner is whether there is substantial evidence to support the Commissioner's decision. *See Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir.1986). It is not the role of the court to review the Commissioner's evidence *de novo* or re-weigh the evidence presented to the ALJ. *See Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190 (3d Cir.1986). Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *See, e.g., Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir.1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979). Substantial evidence consists of more than a mere scintilla of evidence but somewhat less than a preponderance of the evidence. *See, Ginsburg v. Richardson,* 436 F.2d 1146, 1148 (3d Cir.1971).

■ A district court's review of a magistrate judge's report and recommendation is *de novo.* *See,* 28 U.S.C. § 636(b)(1).

### D. Analysis:

#### 1. Social worker's report:

■ As noted above, Ms. Williams contests Judge Angell's failure to conclude that the ALJ erred in failing to consider the social worker's report. *See* Plaintiffs Objections, at 1. Ms. Williams argues that the Third Circuit has "repeatedly admonished the Commissioner for his repeated failure to analyze and explicitly weigh all relevant, probative and available evidence." *Id.* Ms. Williams also argues that the Ms. Hansen's status as a social worker does not provide justification for completely ignoring her report. *See id.* at 2.

The Commissioner responds to Ms. Williams by arguing that the social worker's report cannot qualify as an acceptable

source of medical evidence concerning a claimant's disability. *See* Defendant's Response to Plaintiff's Objections to the Magistrate Judge's Report and Recommendation ("Defendant's Response"), at 2. The Commissioner argues that the ALJ was not required to discuss this evidence because it was non-medical evidence. *See id.* As a result, the Commissioner argues that the ALJ's opinion was supported by substantial evidence. *See id.* at 1.

In *Cotter*, the Court of Appeals noted that there are "cogent reasons why an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." 642 F.2d at 704–05. The Court of Appeals explained that a clear explanation is necessary to aid the district court in performing its statutory function of judicial review, to avoid judicial usurpation of administrative functions, to ensure a more careful administrative consideration, and to help the parties plan their cases for judicial review. *See id.* at 705. Because of the district court's obligation to review ALJ decisions, the Court of Appeals suggested that an ALJ's findings should be "as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based." *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir.1974). This standard requires that the ALJ provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Unless the Commissioner – via the ALJ and the Appeals Council – has analyzed all the evidence and sufficiently explained the weight given to all the evidence, the decision will not be considered to be supported by substantial evidence. *See Dobrowolsky*, 606 F.2d at 407.

The Commissioner's argument that a social worker's report cannot qualify as an "acceptable source" of medical evidence concerning a claimant's disability is accurate. *See* Defendant's Response, at 2. However, the Commissioner's suggestion that non-medical evidence is not relevant evidence of a claimant's disability is inaccurate. The Social Security regulations provide that evidence from an acceptable medical source is necessary to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1513(a)(1)-(3). However, the Social Security regulations provide that information from non-medical sources is also acceptable information to supplement information from medical sources. *See* 20 C.F.R. § 404.1513(e). The regulations provide that other valid sources include (1) public and private social welfare agencies; (2) observations by non-medical sources; and (3) other practitioners like naturopaths, chiropractors, audiologists. *See* § 404.1513(e)(1)-(3). Susan Hansen's status as a social worker clearly permits her report to be characterized as an acceptable source of information under the Social Security Regulations. *See* § 404.1513(e).

As stated previously, Ms. Hansen reported that Ms. Williams was experiencing depression, low self-esteem, and difficulty concentrating. *See* Tr., at 405. Ms. Hansen also concluded that Ms. Williams had marked impairments in her abilities to complete a normal workday, perform routine tasks on a regular, reliable basis without frequent absences, maintain continuous performance to complete a task, and perform routine tasks on a sustained and productive basis as expected by most employers. *See* Tr., at 407–10. Furthermore, Ms. Hansen found that Ms. Williams would have moderate difficulties in her ability to function independently on the job, concentrate and attend to a task over an eight-hour period, and perform at a consistent pace without an unreasonable number and length of rest periods. *See* Tr., at 407–10. All of Ms. Hansen's findings are clearly pertinent to a determination of whether Ms. Williams is capable of performing

work in the national economy. Consequently, because nothing in the *Cotter* decision suggests that *only* medical evidence is relevant and probative, Ms. Hansen's report is an acceptable source of information and is, therefore, relevant and probative.

By not discussing the Hansen report, the ALJ has made it impossible for this court, on review, to determine whether the ALJ (1) inadvertently failed to mention the report or (2) advertently elected not to give it significant evidentiary weight. As a result, it is not possible for this reviewing court to make a responsible determination whether, on the record taken as a whole, the decision of the ALJ is or is not supported by substantial evidence. Accordingly, this case must be remanded for further consideration of the evidence.

### 2. State agency psychologist's report:

Ms. Williams' second objection is that the Magistrate Judge failed to conclude that the ALJ erred in ignoring the conclusions of Dr. Thomas Fink, a state agency physician. *See* Plaintiff's Objections, at 4 n. 4. As reported in the Psychiatric Review Technique Form ("PRTF"), Dr. Fink determined that Ms. Williams often had deficiencies of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. *See* Tr. at 102. In addition to filling out the PRTF, Dr. Fink completed a mental residual functional capacity assessment. *See* Tr. at 91.

The ALJ did not specifically mention either of Dr. Fink's reports in her decision. The only mention the ALJ makes of any state agency physician is during the third step of the sequential evaluation process (determining whether claimant meets any of the required listings) when the ALJ concluded that a listing was not met based on "the opinions of the physicians employed by the State Agency." Tr., at 15. Furthermore, no mention was made of any state agency physician or state agency psychologist during step five of the sequential evaluation process.

The Commissioner argues that the assessment by Dr. Fink in the PRTF is only relevant at stage three of the sequential evaluation process. *See* Defendant's Response, at 3–4. In other words, the Commissioner contends that the PRTF has no bearing on stage five of the sequential evaluation process (ability to work in the national economy) because the PRTF is not a residual functional capacity assessment. *See id.* The Commissioner argues that only the mental residual functional capacity assessment is relevant at step five of the sequential evaluation process. *See id.* As such, the Commissioner argues that the ALJ was not required to explain the weight given to the state agency psychologist's PRTF findings because the findings were not "probative evidence" of a disabling psychological condition. *See* Defendant's Response, at 3. *See id.* The Commissioner does acknowledge that the state agency psychologist's mental residual functional capacity assessment – the report that the Commissioner argues is relevant at step five – actually supports the ALJ's final holding. *See id.*

■ If the residual functional capacity assessment is considered relevant and probative evidence, the PRTF should also be considered relevant and probative for two reasons. First, similar to the residual functional capacity assessment, the PRTF is also an assessment of Ms. Williams' mental capacity. Although the PRTF is not directly aimed at step five, the step that is at issue in this case, the PRTF is relevant to that step because it deals with Ms. Williams' mental capacity, which is directly relevant to her ability to work in the national economy. Second, the PRTF assessment was conducted three months after the residual functional capacity assessment. *See* Tr., at 91–102. Thus, it is a more up-to-date assessment of Ms. Williams' mental capacity. On remand, the ALJ should include the PRTF among the items of evidence to be considered in relation to step five.

### 3. Subjective Complaints of Pain:

Ms. Williams' third objection to the Magistrate Judge's R. & R. is that the Magistrate Judge should have disapproved the ALJ's disregard of the claimant's subjective complaints of pain. *See* Plaintiff's Objections, at 4. Ms. Williams argues that the ALJ was not entitled to discredit her subjective complaints of pain unless the discrediting was based on objective medical evidence that would contradict the claimant's testimony. *See id* The Commissioner argues that there is substantial evidence to support the ALJ's evaluation of Ms. Williams' subjective symptoms. *See* Defendant's Response, at 5.

The Third Circuit requires that "[w]here medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." *Mason v. Shalala*, 994 F.2d 1058, 1067–68 (3d Cir.1993) (citing *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985)). Insofar as a claimant's subjective complaints of pain are supported by objective medical evidence, the ALJ is required to "credit appellant's testimony unless there exist[s] contrary medical evidence." *Id.* at 1068.

In the present case, the ALJ stated that Ms. Williams' "demonstrated condition could be expected to produce some degree of fatigue and pain as well as concentration difficulty." Tr., at 17. In this statement, the ALJ agrees that the claimant's condition, as described by objective medical evidence, was one capable of producing pain and has produced pain. The ALJ then attempts to put Ms. Williams' pain in context by referencing the testimony of Ms. Williams and her friend, Ms. Gray, as well as the affidavit of Ms. Williams' neighbor:

> The claimant has alleged that her back and leg pain are totally disabling and work-preclusive, yet she has testified that she only takes Advil, a relatively mild pain medication for relief of symptoms. She has alleged fatiguability, yet has provided testimony (from her friend, and, to some extent, her own testimony) which indicates that she babysits 2 children for some portion of each week. Claimant's friend, Ms. Gray, credibly testified that Ms. Williams babysits for a neighbor's child 3 to 4 times per week, for some portion of the day (not the entire day). This is confirmed by the neighbor's affidavit. Claimant also babysits her own granddaughter (age 3), sometimes for the entire day. Additionally, claimant lives in a second floor apartment building which has no elevator, and she generally does her own laundry, goes to AA meetings, goes for walks or to the Gym, visits friends and relatives, and takes trips to the shore.

Tr. at 17–18.

▮▮▮ *Mason* does not prohibit an ALJ from referring to non-medical evidence to support an inference adverse to a claimant in all cases. "We do not quarrel with the ALJ's entitlement to draw an inference adverse to appellant from the fact that appellant has not sought medical assistance to relieve his professed pain." *Id.* at 1068. Similarly, in the present case, the ALJ was entitled to take account of the fact that Ms. Williams took weak medications for her pain. The ALJ was also entitled to explore the question whether Ms. Williams' daily activities were inconsistent with her professed pain. The ALJ could not, however, consistent with *Mason*, rely *solely* on non-medical evidence to contradict the subjective complaints of pain, to the extent that the subjective complaints are supported by objective medical evidence.

It is unclear from the ALJ's opinion whether, in contravention of *Mason*, the ALJ relied solely on non-medical evidence to discredit Ms. Williams' objectively medically supported subjective complaints of pain. In light of *Mason*, the ALJ will, on remand, need to provide a more precise assessment and recital of the evidence re-

lied on to credit, or discredit, Ms. Williams' complaints of pain.