* The Hon. R. Barclay Surrick, United States District Judge for the Eastern District of

fine and special assessment. In this appeal, the defendant contends that his waiver of a jury trial was ineffective because the District Court was not provided with evidence suggesting that the defendant had a history of mental illness.

After carefully reviewing the record and all of the facts brought to our attention in the defendant's brief, we are convinced that the District Court did not err in concluding, after a lengthy colloquy, that the defendant had made a knowing and voluntary waiver of his right to a jury trial. The incidents on which the defendant now relies are insufficient to show that the District Court erred in its determination.

For the reasons set out above, the judgment of the District Court is affirmed.

**Denise NAJMI–NEJAD, Appellant,**

v.

***Jo Anne B. BARNHART,
Commissioner of Social
Security**

---

Pennsylvania, sitting by designation.

* (Pursuant to F.R.A.P. 43(c)).

No. 02–4477.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) July 29, 2003.

Decided Aug. 20, 2003.

Eric J. Fischer, Elkins Park, PA, for Appellant.

Amy E. Nalence, Philadelphia, PA, for Appellee.

Before SCIRICA, Chief Judge, RENDELL and AMBRO, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Denise Najmi–Nejad appeals the District Court's grant of summary judgment to the Commissioner denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 138–1382f. For the reasons that follow, we will affirm.[1]

Najmi–Nejad first filed for DIB in 1993, alleging a disability due to chronic high

---

1. The District Court had jurisdiction under 42 U.S.C. 405(g), and we exercise jurisdiction over the Court's final order under 28 U.S.C. § 1291.

blood pressure and kidney disease. That claim was denied and not appealed. In 1996 and 1997, Najmi–Nejad filed new applications for SSI and DIB, alleging a disability due to renal disease, high blood pressure, temporomandibular joint disease, musculoskeletal pain, a vision impairment, hearing loss, status post hernia surgeries, and weight loss. After those applications were denied by the Commissioner, Najmi–Nejad requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ considered the medical opinions of a number of physicians, including Najmi–Nejad's treating psychiatrist, Dr. Judith Navarro, M.D., received counseled testimony from Najmi–Nejad, and consulted a Vocational Expert ("VE"). The ALJ then denied benefits. After her request for review by the Appeals Counsel was denied, Najmi–Nejad filed a complaint in the District Court. Both parties cross-moved for summary judgment, and the Court granted judgment in favor of the Commissioner. Najmi–Nejad appeals.

We review the Court's grant of summary judgment *de novo,* applying the same deferential standard as the District Court, that is, whether the ALJ's finding are supported by "substantial evidence." *Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995). It is "less than a preponderance of the evidence, but more than a mere scintilla." *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Servs.,* 48 F.3d 114, 117 (3d Cir.1995). In making this determination "we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir.2002) (citing *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir.1992)).

In order to qualify for SSI or DIB, a person must be disabled as that term is defined by the Social Security Act and accompanying regulations. *Burns,* 312 F.3d at 118. Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment with can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A) (2002). In evaluating Najmi–Nejad's claim for benefits, the ALJ applied the familiar five-step analysis, finding at steps one through three that Najmi–Nejad was not currently employed, and that her back disorders, depression, and hypertension were severe impairments, but that they did not meet or equal any of the impairments listed in Appendix 1 to Subpart P of Part 404 ("Listing of Impairments"). 20 C.F.R. §§ 416.920(d), 404.1520(d). In finding that her depression did not meet Listing 12.04, the ALJ refused to give controlling weight to Dr. Navarro's opinion that Najmi–Nejad's depression met the severity requirements, even though Dr. Navarro was Najmi–Nejad's treating physician, because the ALJ determined that the other documentary medical reports and evidence did not support such a finding.

The ALJ then moved on to step four, and found that Najmi–Nejad did not retain the residual functional capacity to perform her past work but that she could handle the exertional demands of sedentary work. Finally, at step five, the ALJ consulted a VE, to whom the ALJ posed the following hypothetical:

Assume a person of the claimant's age, education, and vocational profile. Assume that person can lift 5 pounds frequently and 10 pounds occasionally. Assume further limitations of no climbing

or bending, occasionally pushing or pulling, the requirement of a sit/stand option, occasional standing and walking, no complex instructions or work assignments and limited exposure to dust, chemical and other pollutants.

Given this hypothetical, the VE testified that Najmi–Nejad could work at the sedentary exertional level as a cashier, of which there are 66,000 jobs nationally, or assembler, of which there exist 48,000 jobs nationally.

On appeal, Najmi–Nejad argues that the ALJ's findings are not supported by substantial evidence because 1) Dr. Navarro's opinion that Najmi–Nejad's depression met Listing 12.04 should have been given controlling weight, and 2) the hypothetical posed to the VE did not include all of her relevant mental limitations. She also claims that her 1993 DIB application was "de facto" reopened and should be addressed. Because we find that the ALJ's denial of benefits is supported by substantial evidence, and that her 1993 application was not reopened, we will affirm the judgment of the District Court.

Najmi–Nejad's first argument is that the opinion of her treating psychiatrist, Dr. Navarro, that she suffered from disabling depression should have been given controlling weight. As the District Court noted, treating physicians' findings and opinions are generally given great weight, however, "the medical judgment of the treating physician can be rejected on the basis of contradictory medical evidence." *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988) (citing *Rossi v. Califano*, 602 F.2d 55, 57 (3d. Cir.1979)). If substantial evidence in the record supports a conclusion contrary to that of the treating physician, the ALJ may reject the treating physician's findings. *Frankenfield*, 861 F.2d at 408.

■ Here, the ALJ rejected Dr. Navarro's conclusion that Najmi–Nejad's depression met the criteria of Listing 12.04 because that conclusion was contradicted by the other documentary evidence. ("Except for Dr. Judith Navarro, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.") The ALJ accepted that Najmi–Nejad met part "A" of the Listing, which requires persistent depressive symptoms, but found that she did not meet part "B" because she did not have the required restrictions in daily living activities, difficulties in maintaining social functioning, concentration, persistence, or pace, or repeated episodes of decompensation. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04A.1., B.1. The ALJ's determination is supported by Najmi–Nejad's own testimony, in which she conceded she was capable of "minimal housekeeping," "light cooking," going to the "shops with neighbors," using public transportation, and attending church, Dr. Navarro's own notes indicating that until September of 1998, Najmi–Nejad denied all symptoms of depression outside of depressed mood and disturbed sleep, the opinion of Dr. Carl Herman, a consultative psychologist, who stated that as of July 1997, Najmi–Nejad did not have a psychiatric disorder, and a lack of any objective evidence that Najmi–Nejad decompensated repeatedly for extended durations. The record thus contained substantial evidence upon which the ALJ could reject Dr. Navarro's opinion and conclude instead that Najmi–Nejad did not meet Listing 12.04.

Najmi–Nejad next challenges the ALJ's finding at step five that there exist alternate jobs in the national economy that can be performed by someone with her limitations. Specifically, Najmi–Nejad claims that the testimony of the VE that she could work as a cashier or assembler did not constitute substantial evidence because

the hypothetical question upon which the VE's opinion was based did not include her relevant mental limitations. The testimony of a VE constitutes substantial evidence where a hypothetical question considers all of a claimant's impairments that are supported by the medical record. *Chrupcala v. Heckler,* 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions are only required to include those factors that are supported by objective medical evidence contained in the record and need not include limitations supported solely by subjective testimony. *Id.* at 1271.

In the Psychiatric Review Technique Form ("PRTF") section in which the ALJ set down his evaluation of whether Najmi–Nejad met Listing 12.04 Part B, the ALJ noted that she "often" had "deficiencies of concentration, persistence, or pace." Najmi–Nejad argues that the hypothetical question posed to the VE should have included these noted deficiencies. However, because these limitations were not supported by objective medical evidence in the record, the ALJ was not required to specifically include them in the hypothetical. Dr. Navarro only mentioned that Najmi–Nejad had difficulties in concentration, persistence and pace one time, when she became extremely anxious about her upcoming administrative hearing. But, one week prior, Dr. Navarro noted that Najmi–Nejad was feeling better. In addition, Najmi–Nejad's own testimony that she was able to attend psychotherapy sessions and other doctor appointments several times per month, and that she is able to shop and to socialize with friends contravenes her contention that she has difficulties in concentration, persistence,

and pace. Furthermore, the ALJ did include in the hypothetical a limitation to simple routine work, which sufficiently accounted for any of Najmi–Nejad's deficiencies. *See Burns,* 312 F.3d at 123 (noting that the phrase "simple, routine, repetitive work" would account for "deficiencies in concentration, persistence [and] pace"). Thus, the hypothetical adequately reflected Najmi–Nejad's impairments, and therefore the VE's testimony constituted substantial evidence supporting a finding of no disability.[2]

Finally, Najmi–Nejad argues that there has been a "de facto" reopening of her 1993 DIB claim by virtue of the ALJ's statement that the claim could be reopened "if we need to" and his consideration of evidence of disability back to the alleged 1988 onset date. She thus appears to be arguing that the ALJ, had he awarded benefits, should have awarded them going back to 1993. *See, e.g., Coup v. Heckler,* 834 F.2d 313, 317–18 (3rd Cir. 1987) (finding that application had been "de facto" reopened where ALJ considered and relied extensively on prior evidence of disability and holding that claimant was properly entitled to benefits going back to earlier application). However, because we will affirm summary judgment denying Najmi–Nejad's claim, we need not address her contention that the ALJ de facto reopened her earlier application.

Accordingly, we will affirm the order of the District Court granting summary judgment to the Commissioner.

---

2. The cases relied upon by Najmi–Nejad in her Reply Brief for the proposition that the ALJ was required to include the limitations noted in the PRTF in his hypothetical to the VE, *Williams v. Apfel,* 98 F.Supp.2d 625 (E.D.Pa.2000), and *Brachtel v. Apfel,* 132 F.3d 417 (8th Cir.1997), do not alter our conclusion, as in neither case did the court actually so hold.