Lisa J. BURGER, Plaintiff,

v.

Michael J. ASTRUE,[1] Commissioner
of Social Security, Defendant.

No. SACV 06–0965–RC.

United States District Court,
C.D. California.

Feb. 12, 2008.

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

Bill Latour, Bill Latour Law Offices, Loma Linda, CA, for Plaintiff.

Assistant US Attorney LA–SSA, Office of the General Counsel for Social Security Adm., San Francisco, CA, Sharla Cerra, AUSA–Office of US Attorney, Los Angeles, CA, for Defendant.

## OPINION AND ORDER

ROSALYN M. CHAPMAN, United States Magistrate Judge.

Plaintiff Lisa J. Burger filed a complaint on October 19, 2006, seeking review of the

Commissioner's decision denying her application for disability benefits. On March 12, 2007, the Commissioner answered the complaint, and the parties filed a joint stipulation on May 7, 2007.

## BACKGROUND

### I

The plaintiff, who was born on October 15, 1957, is currently 50 years old. Certified Administrative Record ("A.R.") 48. She has a GED and a real estate license, and has previously worked as a broker's assistant, a loan processor, and a payroll clerk. A.R. 59–64, 66–67, 258–59. On July 23, 2004, plaintiff applied for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 423, claiming an inability to work since September 22, 2003, due to hypertension, depression, insomnia, an anxiety disorder, and latent tuberculosis. A.R. 48–52, 65. The plaintiff's application was initially denied on November 12, 2004, and was again denied following reconsideration. A.R. 18–28. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Gene Duncan ("the ALJ") on February 23, 2006. A.R. 29, 255–301. On May 5, 2006, the ALJ issued a decision finding plaintiff is not disabled. A.R. 7–14. The plaintiff appealed this decision to the Appeals Council, which denied review on September 14, 2006. A.R. 3–6.

### II

Robert K. Tarter, M.D., an internist, treated plaintiff from July 2001, through at least February 15, 2006, diagnosing her with type II diabetes mellitus, neuropathy and hypertension, among other conditions.[2] A.R. 188–91, 225–31, 239–43, 249–53. Dr. Tarter found plaintiff's hypertension is poorly controlled, and she has symptoms of peripheral neuropathy. *Ibid.* On February 15, 2006, Dr. Tarter opined plaintiff's condition causes numerous symptoms, including: fatigue; general malaise; extremity pain and weakness; difficulty walking; muscle weakness; loss of manual dexterity; episodic vision blurriness; diarrhea; urinary frequency; bed wetting; hot flashes; sweating; difficulty thinking/concentrating; excessive thirst; abdominal pain; rapid heart beat/chest pain; vascular disease/leg cramping; dizziness/loss of balance; headaches; sensitivity to light, heat or cold; neuropathy; hypertension; anxiety; and depression. A.R. 239. Dr. Tarter further opined plaintiff can never lift, can only occasionally bend at the waist, can use her hands to grasp, turn or twist objects only 2% of the workday, cannot use her arms to reach or her fingers for fine manipulation, must avoid all exposure to extreme cold or heat, high humidity, fumes, odors, dusts, gases, soldering fluxes, solvents/cleaners, and chemicals, and must avoid even moderate exposure to perfumes and cigarette smoke. A.R. 242–43. Dr. Tarter also opined plaintiff cannot walk even one city block without rest or severe pain, she can continuously sit for no more than 10 minutes at one time and stand for no more than 5 minutes at a time, and sit, stand and/or walk for less than 2 hours each in an 8–hour workday, plaintiff needs a job allowing her to shift positions at will, she sometimes needs to take unscheduled breaks of 1 or more hours every 20 minutes of a work shift, plaintiff must walk for 2 minutes every 5 minutes during an 8–hour workday, and she needs to use a cane or other assistive device while walking. A.R. 240–42. Additionally, Dr. Tarter opined plaintiff's legs should frequently be elevated above her heart if she sits for prolonged periods.

---

**2.** Although plaintiff raised both physical and mental complaints, this opinion primarily discusses relevant medical records addressing plaintiff's physical condition.

A.R. 242. Dr. Tarter also stated plaintiff's diabetic symptoms constantly interfere with her attention and concentration, she is severely limited in her ability to handle work-related stress, and her medications cause her to experience confusion, dizziness, drowsiness, pain, insomnia, and chronic fatigue. A.R. 240. Finally, Dr. Tarter opined plaintiff is likely to have good and bad days and will likely miss more than three days of work a month due to her condition. A.R. 243.

Dr. Tarter referred plaintiff to Jenny Q. Zhu, M.D., a neurologist, who examined plaintiff on January 30, 2006, and diagnosed plaintiff with peripheral neuropathy, etiology unknown. A.R. 233–34. Upon examination, Dr. Zhu noted plaintiff has decreased sensation to pinprick in her right foot, forearm, and from the calves on down bilaterally, decreased sensitivity to vibration in both feet, and decreased reflexes in both arms and knees, with only trace reflexes in both ankles. A.R. 233. Dr. Zhu found plaintiff's gait was wide based; however, Dr. Zhu was unable to test plaintiff's ability to toe, heel, and tandem walk because plaintiff was unsteady and could not feel her foot, *Id.* Hemoglobin tests showed plaintiff is a diabetic. A.R. 235. On February 14, 2006, plaintiff underwent electrodiagnostic studies, which showed evidence of motor sensory polyneuropathy, possibly secondary to diabetes. A.R. 245–47.

On October 21, 2004, Steven E. Gerson, D.O., examined plaintiff and diagnosed her with hypertension. A.R. 164–68. Dr. Gerson also found plaintiff had midline lumbar spinal tenderness, paralumbar muscle tenderness, and decreased range of motion; however, a straight-leg raising test was negative, and Dr. Gerson opined the examination was not consistent with acute radiculopathy. A.R. 167. Dr. Gerson further found plaintiff walks with a mild limp and has: bilateral plantar foot tenderness, with full range of motion and no effusion, warmth, or synovitis; left ankle joint tenderness, with full range of motion and no edema, crepitus or joint instability; bilateral shoulder joint tenderness, with full range of motion and no edema, crepitus, or joint instability; bilateral dorsal hand tenderness and bilateral thumb MCP and DIP joint tenderness, with mild stiffness of the MCP joints with decreased grip strength on the left, no warmth or synovitis, and with fine motor coordination intact; and decreased sensation to pinprick in a stocking-glove distribution in both feet consistent with peripheral neuropathy. A.R. 167–68. Dr. Gerson opined plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds, and can stand, walk and/or sit for up to 6 hours in an 8–hour workday. A.R. 168.

Medical expert Vickie Y. Height, M.D., an internist, testified at the administrative hearing that plaintiff has hypertension, which is not well-controlled, a history of migraine headaches, atypical chest pain, back pain syndrome, Type II diabetes mellitus, and peripheral neuropathy in her lower extremities. A.R. 264–86. Dr. Height opined there is no cure for plaintiff's neuropathy; however, she did not need to use a cane, and Dr. Tarter's opinion was "out of proportion to the documented examination findings in his records." A.R. 270, 272–74. Dr. Height concluded plaintiff can: occasionally lift 20 pounds, bend, balance, stoop, kneel, crouch, crawl, and climb stairs; frequently lift 10 pounds; sit for six hours out of an 8–hour workday; and she should not climb ladders, scaffolds, or ropes or operate foot controls, though she can drive. A.R. 271–72.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the

Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. *Lingenfelter v. Astrue,* 504 F.3d 1028, (9th Cir.2007); *Hoopai v. Astrue,* 499 F.3d 1071, 1074 (9th Cir.2007).

 The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." *Roberts v. Shalala,* 66 F.3d 179, 182 (9th Cir.1995), *cert. denied,* 517 U.S. 1122, 116 S.Ct. 1356, 134 L.Ed.2d 524 (1996); *Smolen v. Chater,* 80 F.3d 1273, 1289 (9th Cir.1996).

The Commissioner has promulgated regulations establishing a fivestep sequential evaluation process for the ALJ to follow in a disability case. 20 C.F.R. § 404.1520. In the **First Step,** the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, in the **Second Step,** the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities. 20 C.F.R. § 404.1520(c). If so, in the **Third Step,** the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If not, in the **Fourth Step,** the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. 20 C.F.R. § 404.1520(f). if not, in **Step Five,** the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity at any time relevant to this decision. (Step One). The ALJ then found plaintiff has severe diabetic peripheral neuropathy (feet) and hypertension (Step Two); however, she does not have an impairment or combination of impairments that meets or equals a Listing. (Step Three). The ALJ next determined plaintiff is able to perform her past relevant work as a payroll clerk and real estate broker's assistant; therefore, she is not disabled. (Step Four).

**IV**

 "At Step Four, claimants have the burden of showing that they can no longer perform their past relevant work." *Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir.2001); *Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir.2005). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto,* 249 F.3d at 845. "To determine whether a claimant has the residual [functional] capacity [ ("RFC") ] to perform [her] past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." *Villa v. Heckler,* 797 F.2d 794, 797–98 (9th Cir.1986); *Marcia v. Sullivan,* 900 F.2d 172, 177 n. 6 (9th Cir.1990). "This requires specific findings as to the claimant's [RFC], the physical and mental demands of the past relevant work, and the relation of the [RFC] to the past work." *Pinto,* 249 F.3d at 845.

A claimant's RFC is what she can still do despite her physical, mental, non-exertional, and other limitations. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir.1989). Here, the ALJ found plaintiff retains the RFC to:

> lift 20 pounds occasionally and 10 pounds frequently; stand/walk 6 hours [in an] 8[-]hour workday; sit 6 hours [in an] 8[-]hour workday; never balance; occasionally climb, stoop, kneel, crouch or crawl; occasionally forcefully grip, grasp, [and] twist the left hand; and[ ] occasionally use foot controls.

A.R. 12. Based upon this RFC, the vocational expert testified plaintiff has the capacity to perform her past relevant work as a payroll clerk and as a real estate broker assistant. A.R. 14, 297–98. However, plaintiff contends the ALJ's RFC determination, upon which the vocational expert's testimony is based, is not supported by substantial evidence because: (a) the ALJ failed to properly consider the opinions of her treating physician, Dr. Tarter; and (b) improperly assessed the side effects of her medication. The plaintiff is correct.

**A. Treating Physician's Opinion:**

The medical opinions of treating physicians are entitled to special weight because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir.1999). Therefore, the ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995), and "[e]ven if [a] treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opin-

ion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725; *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.2001). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretations thereof, and making findings." *Reddick*, 157 F.3d at 725; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725; *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

The ALJ rejected Dr. Tarter's opinions of plaintiff's limitations, stating "Dr. Height reported that Dr. Tarter's assessment of the claimant's limitations is out of proportion to the other medical evidence of record" and "Dr. Height's testimony presents clinical signs that clearly refute the opinions of [Dr. Tarter,] which are not well supported." A.R. 13. However, these conclusory statements are not a specific and legitimate reason for rejecting Dr. Tarter's opinions. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir.1999) ("conclusory reasons will not justify an ALJ's rejection of a medical opinion"); *Embrey*, 849 F.2d at 421 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required....").

Further, the ALJ found "the concentration problems [Dr. Tarter] noted ... were not supported by the doctor's records and the medical expert found no documented support for such an assessment." A.R. 13. Yet, in reaching this conclusion, the ALJ failed to consider the opinion of plaintiff's treating therapist, Jean Mao, MFT, Psy. D., that plaintiff has an "extreme" limita-

tion[3] in her ability to maintain attention and concentration for extended periods.[4] A.R. 95. There fore, this finding also is not a specific and legitimate reason for rejecting Dr. Tarter's opinion. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). In short, "[i]t was ... legal error for the ALJ to discount the opinion[ ] of [the claimant's] treating physician[ ] without providing specific and legitimate reasons for doing so." *Lingenfelter*, 504 F.3d at 1038 n. 10; *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir.2001).

## B. Side Effects of Medication:

 In determining a claimant's limitations, the ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication. *Erickson v. Shalala*, 9 F.3d 813, 817–18 (9th Cir.1993); *Varney v. Sec'y of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir.1988). "[S]ide effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized." *Varney*, 846 F.2d at 585. Thus, when a claimant testifies she is experiencing a side effect known to be associated with a particular medication, the ALJ may disregard the testimony only if he "support[s] that decision with specific findings similar to those required for excess pain testimony...." *Id.*

3. An "extreme" limitation is defined as "[s]evere limitations in this area. No useful ability to function in this area." A.R. 95.

4. Ms. Mao treated plaintiff from February 16, 2005, through at least May 9, 2005, A.R. 95–96, 207–23, diagnosing her with a general anxiety disorder and panic disorder with agoraphobia, and determining plaintiff's Global Assessment of Functioning was 50, A.R. 223, which means plaintiff exhibited "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed. (Text Revision) 2000). On April 25, 2005, Ms. Mao opined plaintiff has: "extreme" limitations in the ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, interact appropriate with the general public, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting; "marked" limitations in her ability to understand and remember very short and simple instructions, make simple work-related decisions, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting; "moderate" limitations in her ability to sustain an ordinary work routine without special supervision, work in coordination with or in proximity to others without being distracted by them, ask simple questions or request assistance and set realistic goals or make plans independently of others; and "slight" limitations in her ability to remember locations and work-like procedures, carry out very short and simple instructions, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. A.R. 95–96. Ms. Mao further opined plaintiff's condition would cause her to miss 3 or more days of work per month. A.R. 96. Although a therapist is not an acceptable medical source, 20 C.F.R. § 404.1513(a), an ALJ should treat such evidence, at a minimum, as qualified lay testimony, 20 C.F.R. § 404.1513(d)(1), which the ALJ must consider. *Sprague*, 812 F.2d at 1231–32; *Bilby v. Schweiker*, 762 F.2d 716, 719 n. 3 (9th Cir.1985) (per curiam); *see also Perillo v. Astrue*, 516 F.Supp.2d 206, 208–09 (D.Conn.2007) (ALJ committed reversible error in failing to consider medical opinion provided by claimant's treating psychotherapist); *Williams v. Apfel*, 98 F.Supp.2d 625, 631–32 (E.D.Pa.2000) (although social worker's report cannot qualify as "acceptable source" of medical evidence, it was relevant to evaluation of claimant's depression, and ALJ committed reversible error in failing to discuss report). Here, the ALJ failed to address the medical records and opinions of Ms. Mao.

Here, plaintiff testified at the administrative hearing that she gets confused, has a very bad memory, and is sleepy a lot due to the medications she takes, which include Atenolol,[5] Lyrica,[6] Trazodone,[7] and Xanax.[8] A.R. 94, 287–88, 291–92; *see also* A.R. 92 ("I am lethargic [and] take lots of medication, which causes confusion, restlessness, memory problems, [and] fear of people and crowds."). She also stated she has some incontinence, constipation and intermittent diarrhea, which "could be side effects from the medication...." A.R. 288. On April 25, 2005, plaintiff also complained of medication side effects, including memory loss, to Jean Mao, her therapist. A.R. 209–10. Furthermore, Dr. Tarter indicated in a questionnaire that plaintiff experiences medication side effects, including confusion, dizziness, drowsiness, pain, insomnia, and chronic fatigue. A.R. 250.

In assessing the side effects plaintiff has from her medication, the ALJ found: "In response to questioning by the [plaintiff's] representative, [Dr. Height] testified that the ... side effects from medications [Dr. Tarter listed] are not among the correct side effects from the [plaintiff's] medi-

cations." A.R. 13. However, this finding mischaracterizes the evidence. Although Dr. Height initially testified that the side effects Dr. Tarter listed are not the expected side effects from Atenolol or Lyrica, she declined to comment on whether Trazodone or Xanax could cause the listed side effects because she is not a psychiatrist. A.R. 278–81. Further, after consulting the Physician's Desk Reference, Dr. Height stated that: for Xanax, "adverse reactions are drowsiness, lightheadedness, depression, insomnia, dry mouth, constipation, nausea, vomiting, diarrhea, [and] nasal congestion"; for Trazadone adverse reactions include "dry mouth, constipation, blurred vision, dizziness, headache, insomnia, nausea, vomiting, confusion, [and] prioprism [sic]"; and for Atenolol adverse reactions include "bradychardia [sic], which is a slow heart rate, hypotension, which would be shortness of breath, and blood dyscrasias, which is ... an abnormality in the red blood cells, and dizziness." [9] A.R. 218–82. Therefore, contrary to the ALJ's finding, Dr. Height's testimony supports plaintiff's testimony and the findings identified by Dr. Tarter, her treating physician, as associated with the

**5.** Atenolol, also called Tenormin, is "a type of medication known as a beta blocker, [which] is used in the treatment of high blood pressure, angina pectoris (chest pain, usually caused by lack of oxygen in the heart muscle due to clogged arteries), and heart attack. When used for high blood pressure it is effective alone or combined with other high blood pressure medications, particularly with a thiazide-type water pill (diuretic)...." *The PDR Family Guide to Prescription Drugs*, 60, 661 (8th ed.2000).

**6.** Lyrica is used to manage the neuropathic pain associated with diabetic peripheral neuropathy and postherpetic neuralgia. *Physician's Desk Reference*, 2540 (61st ed.2007).

**7.** Trazodone, also called Desyrel, "is prescribed for the treatment of depression." *The PDR Family Guide to Prescription Drugs* at 198, 690.

**8.** Xanax "is a tranquilizer used in the short-term relief of symptoms of anxiety or the treatment of anxiety disorders." *Id.* at 742.

**9.** Confusion, constipation, diarrhea, drowsiness, fatigue, impaired memory, and restlessness are common side effects of one or more of the medications plaintiff is taking. *See The PDR Family Guide to Prescription Drugs* at 198 (confusion, constipation, diarrhea, drowsiness and fatigue are common side effects of Trazodone, while restlessness is a less common side effect), 662 (fatigue is a common side effect of Atenolol, while diarrhea, drowsiness, and tiredness are less common side effects), 742 (confusion, constipation, diarrhea, drowsiness, fatigue, impaired memory, and restlessness are common side effects of Xanax, while incontinence is a less common side effect); *Physician's Desk Reference* at 2543–44 (sleepiness is a common side effect of Lyrica).

medications plaintiff takes. As such, the ALJ again committed legal discounting plaintiff's testimony about the side effects of plaintiff's medications in determining plaintiff's RFC. *Erickson,* 9 F.3d at 817–18; *Varney,* 846 F.2d at 585.

 For the reasons set forth above, the ALJ's RFC assessment is not supported by substantial evidence. As such, the vocational expert's testimony, which was based on this faulty RFC, *see* A.R. 297–98, and which was the basis for the ALJ's Step Four determination, A.R. 14, "has no evidentiary value." *Lewis v. Appel,* 236 F.3d 503, 517 (9th Cir.2001); *Matthews v. Shalala,* 10 F.3d 678, 681 (9th Cir.1993); *see also Magallanes,* 881 F.2d at 756 ("[V]ocational expert's opinion about a claimant's residual functional capacity has no evidentiary value if the assumptions in the hypothetical are not supported by the record."). Therefore, the ALJ's Step Four determination that plaintiff can perform her past relevant work as a payroll clerk and real estate broker's assistant is not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1056–57 (9th Cir.2006) (substantial evidence did not support ALJ's conclusion claimant could perform past relevant work when ALJ erroneously evaluated evidence); *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir.2004) (ALJ's finding that claimant's impairments did not prevent him from performing past relevant work not supported by substantial evidence when ALJ erroneously evaluated evidence).

## V

 When the Commissioner's decision is not supported by substantial evidence, the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir.2002). "Generally when a court … reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th Cir.2004) (citations omitted); *Moisa v. Barnhart,* 367 F.3d 882, 886 (9th Cir.2004). Here, remand is appropriate so the ALJ can properly assess the opinions of plaintiff's treating physician, Dr. Tarter, and the side effects plaintiff experiences from the medication she takes.[10] *See Bunnell v. Barnhart,* 336 F.3d 1112, 1116 (9th Cir. 2003) (affirming remand order based, in part, on ALJ's failure to provide adequate reasons for rejecting claimant's treating physicians' opinions); *Varney,* 846 F.2d at 586 (remanding so ALJ can properly assess side effects of claimant's medication).

### ORDER

IT IS ORDERED that: (1) plaintiff's request for relief is granted; and (2) the Commissioner's decision is reversed, and the action is remanded to the Social Security Administration for further proceedings consistent with this Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered accordingly.

### JUDGMENT

IT IS ADJUDGED that Judgment be entered remanding the action to the Social Security Administration for further proceedings consistent with the Opinion and Order, pursuant to sentence four of 42 U.S.C. § 405(g).

---

**10.** Having reached this conclusion, it is unnecessary to reach plaintiff's other arguments, which would not warrant further relief than herein granted.