**Maria PINTO, Plaintiff–Appellant,**

**v.**

**Larry G. MASSANARI, Acting Commissioner of the Social Security Administration,* Defendant–Appellee.**

**No. 99–56000.**

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 12, 2001**

Filed May 1, 2001

* Larry G. Massanari is substituted for Kenneth S. Apfel, Commissioner of the Social Security Administration, pursuant to Fed. R.App. P. 43(c)(2).

** The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Ralph Wilborn, Ralph Wilborn and Etta L. Wilborn, P.C., Tucson, Arizona, for the plaintiff-appellant.

Donna M. Montano, United States Department of Heath & Human Services, San Francisco, California, for the defendant-appellee.

Before: FERGUSON, TASHIMA, and FISHER, Circuit Judges.

## OPINION

FERGUSON, Circuit Judge:

### I

Maria Pinto appeals the denial of her claims for Social Security disability benefits under 42 U.S.C. § 423 and for Supplemental Social Security Income disability

benefits under 42 U.S.C. § 1382. Although the administrative law judge ("ALJ") found that Pinto speaks very little English and that she cannot bend or stoop more than occasionally, he concluded that she could perform her past relevant work. Because her past work does not comport with these restrictions either as actually performed or as generally performed, we remand for further factual findings.

## II

Maria Pinto applied for disability insurance benefits in 1994, claiming that she was unable to work due to left foot pain, hypertension, and depression. After her claim was denied through administrative proceedings, Pinto requested a hearing before an ALJ. Through an interpreter at the hearing, Pinto testified that she was born in El Salvador in 1938, attended school there only until the third grade, and arrived in America in 1981. She lives with her son and daughter-in-law and their children. She speaks very little English.[1]

From her arrival in America until April, 1994, Pinto worked as a hand packager at Dolores Canning. As actually performed, her job required her to engage in bending "constantly." The ALJ found that Pinto could stoop, climb, and balance only occasionally.

At her hearing, the following exchange took place between the ALJ and the vocational expert:

> Q: Assume we have an individual of the same profile as Ms. Pinto and an individual—hypothetical individual currently 58 years of age with minimal education in another country. An individual who is neither litera[te] in [E]nglish nor able to communicate in [E]nglish and work experience as you described. Now, assume first that the individual had the following limitations only. First that the individual could lift 50 pounds occasionally, and 25 pounds frequently, could stand and walk 6 hours out of an 8 [hour] day and at least 2 hours at a time. No impairment noted in sitting, and the only impairments noted were that climbing, balancing, stooping, kneeling, crouching and crawling were said to be limited as occasionally.... In your opinion as a vocational expert, would the individual as described in [the] hypothetical be able to perform past work as a hand packager?
>
> A: Yes, sir.
>
> Q: All right, and the restriction, I guess particularly the issue would be stooping wouldn't particularly be an issue with that job?
>
> A: You[r] Honor, the occupation of hand packager requires stooping according to The Dictionary of Occupational Titles on a negligible basis[. B]ased on my own experience, I would modify that to say occasional.
>
> Q: Okay, all right, so at least as the job is generally performed it requires only occasional stoopin[g. A]nd the other postural requirements that I recited to your earlier?
>
> A: The other postural requirements are negligible.

Not discussed at the hearing was the fact that, according to the definition of hand packager in the Dictionary of Occupational Titles, the job requires an ability to "[r]ec-

1. The ALJ noted that he found Pinto's claims that she knew absolutely no English "an overstatement" and stated that he believed that she knows "at least a few words." Pinto did not challenge this finding. The ALJ also found, however, that Pinto is illiterate in English, and so we find it unnecessary to speculate further about her language ability. There is no indication that she knows 2,500 words in English, the requirement to reach language level "1" in the Dictionary of Occupational Titles classifications.

ognize [the] meaning of 2,500 (two or three-syllable) words," "[c]ompare similarities and differences between words and between series of numbers," and write and speak simple, grammatically correct sentences.[2] DOT Appendix C(III). The ALJ also failed to mention that uncontroverted evidence indicated that Pinto's job as actually performed at Dolores Canning required "constant" stooping and bending.

Apparently basing his decision on the above exchange, the ALJ came to the following conclusion:

> The claimant is 59[sic] years old and has a third grade education. She is illiterate in English. Given her vocational profile and residual functional capacity as previously stated, the vocational expert testified that claimant could return to her past relevant work as a hand packager. Therefore, for the reason that claimant can return to her past relevant work, I find that she is not disabled.

The Commissioner of Social Security adopted the findings of the ALJ. After the Appeals Council declined Pinto's request for review of the ALJ's decision, she appealed to U.S. District Court for the Central District of California. The parties consented to the case being heard by a magistrate judge. That court affirmed the ALJ's ruling. This timely appeal followed.

### III

We review *de novo* a district court's order upholding the Commissioner's denial of benefits. *Schneider v. Commissioner of Social Sec. Admin.*, 223 F.3d 968, 973 (9th Cir.2000). We may set aside a denial of benefits if "it is not supported by substantial evidence or it is based on legal error." *Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999) (citations and quotations omitted).

The ALJ's determination was made at step four of a five-step disability determination process. At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000).

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82–62. *See* 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965.[3] This is done by looking at the "residual functional capacity and the

2. The Dictionary of Occupational Titles does not specify that the applicant must be able to perform these functions in English. While we find that to be the most persuasive reading, we do not reach that issue today because Pinto does not meet these competencies in Spanish either. *See* DOT Appendix C(III) ("The description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States.") *See also* 20 C.F.R §§ 416.964(b)(5) and 404.1564(b)(5) ("[W]e consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.")

3. For the purposes of this case, Social Security Rulings and Acquiescence Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. §§ 402.35(b)(1) and (2); *Heckler v. Edwards*, 465 U.S. 870, 873 n. 3, 104 S.Ct. 1532, 79 L.Ed.2d 878 (1984).

physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:

1. The actual functional demands and job duties of a particular past relevant job; or
2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82–61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82–62.

Pinto argues that the ALJ committed reversible error when he indicated in his questioning of the vocational expert that he was basing his decision only on whether Pinto could perform her past relevant work "as generally performed" without making a finding about her past relevant work as actually performed. We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations above. *See Villa v. Heckler,* 797 F.2d 794, 798 (1986) ("[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job.")

This is not to say, however, that the ALJ is in any way relieved of his burden to make the appropriate findings to insure that the claimant really can perform his or her past relevant work. This case vividly demonstrates the difficulty for the reviewing court where sufficient findings are not made. According to the facts before this Court and the ALJ's "function-by-function assessment of [Pinto]'s limitations or restrictions," SSR 96–8P, Pinto's physical restrictions prevent her from continuing her past work as actually performed, and her language restrictions prevent her from continuing her past work as generally performed.

We do not know whether the ALJ's conclusion that Pinto could perform her past relevant work addressed her work as actually or generally performed. The regulations advise an ALJ to first consider past work as actually performed, and then as usually performed. *Id.* We will proceed in a similar manner.

### A

Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, SSR 82–61, and the claimant's own testimony, SSR 82–41. Pinto provided both of these, and both indicated that her job at Dolores Canning required "constant" standing, bending and stooping; in fact, she would stand for the entire eight-hour shift packing and lifting boxes. Nothing was introduced into the record to contradict this testimony, and the ALJ did not make any adverse findings. However, the ALJ did find that Pinto could not "stoop, climb, [or] balance, more than occasionally." This finding is contrary to a conclusion that Pinto could continue her past work as actually performed. "Occasionally" does not mean "constantly."

### B

Turning to the question of Pinto's past relevant work as generally performed, we begin by observing that the best source for how a job is generally performed is usually the Dictionary of Occupational Ti-

tles. *See Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir.1995); 20 C.F.R. §§ 404.1566(d) and 416.966(d); Soc. Sec. Rul. No. 82–61. In order for an ALJ to accept vocational expert testimony that contradicts the Dictionary of Occupational Titles, the record must contain "persuasive evidence to support the deviation." *Johnson,* 60 F.3d at 1435.

Here, however, reliance on the Dictionary of Occupational Titles alone was not sufficient. Policy statements published by the Social Security Administration warn that:

> [f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable. *While ... "packaging jobs" ... may have a common characteristic, they often involve quite different functional demands and duties requiring varying abilities and job knowledge.*

SSR 82–61 (emphasis added). Indeed, the definition of "Packager, Hand" in the Dictionary of Occupational Titles contains more than two dozen different possible jobs, from Bakery Worker to Bow Maker to Coil Strapper to Inspector–Packager. Pinto's past work at Dolores Canning had involved packing "pig feet, chitlings, pig skins, and chilies or chili."

According to the Dictionary of Occupational Titles, a hand packager is a job requiring a medium exertion level. The ALJ determined that Pinto's residual functional capacity was "for medium work restricted only by an inability to stoop, climb, and balance, more than occasionally." The ALJ's opinion did not address the fact that most "medium" jobs require more than occasional stooping and bending. Instead, the ALJ relied on the vocational expert's opinion that the job of hand packager, unlike most medium exertion jobs, requires only occasional stooping. Given that the title of hand packager is extremely generic, as stated in the regulations, we have doubts about whether this assurance alone was an adequate basis for the ALJ's determination that Pinto's residual functional capacity comported with her past relevant work.

Another matter of concern is the ALJ's failure to clarify how Pinto's language and literacy abilities factored into his analysis that Pinto could perform her past relevant work, given that the Dictionary of Occupational Titles description required language ability above that possessed by Pinto.[4]

The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant. Illiteracy seriously impacts an individual's ability to perform work-related functions such as understanding and following instructions, communicating in the workplace, and responding appropriately to supervision. These are all factors that Social Security Ruling No. 96–8P requires an ALJ to consider when determining whether a claimant has the residual functional capacity to perform past relevant work.[5]

4. For simplicity's sake, we will refer to Pinto as "illiterate," although she can speak Spanish. *See* Soc. Ser. Rep. Ser. 855 Acquiescence Rul. 86–3(5) (1983–1991) ("Illiteracy is subsumed under inability to communicate in English. It has thus been longstanding SSA policy that the rules applying to individuals who are illiterate or unable to communicate in English also apply to those who are illiterate and unable to communicate in English") (citing Section 201.00(i) of Appendix 2 to Soc. Sec. Rul. No. 4).

5. It is unclear whether the ALJ should have considered Pinto's language skills at all at step four, given that Pinto's difficulties with language are independent of the disability upon which she bases her claim. We decline to reach the question of whether illiteracy may properly be considered at step four of a

Here the ALJ, although noting Pinto's limitation in both his findings of fact and hypothetical to the vocational expert, failed to explain how this limitation related to his finding that Pinto could perform her past relevant work as generally performed. See SSR 82-62.

We do not suggest that applicants who are illiterate are entitled to a finding in step four of the disability proceeding that they are disabled. A claimant is not per se disabled if he or she is illiterate. We merely hold that in order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation. *See Johnson v. Shalala*, 60 F.3d at 1435. Neither the ALJ nor the vocational expert addressed the impact of Pinto's illiteracy on her ability to find and perform a similar job.

Because the ALJ made very few findings and relied largely on the conclusions of the vocational expert, it is difficult for this Court to review his decision. As the Tenth Circuit has noted, "[r]equiring the ALJ to make specific findings on the record at each phase of the step four analysis provides for meaningful judicial review. When ... the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review." *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir.1996).

## IV

The Commissioner asks us to ignore Pinto's illiteracy because the ALJ should not have considered it until step five of the disability process. This assertion was not raised in the administrative proceedings or in district court. Although we can affirm the judgment of a district court on any ground supported by the record, *Downs v. Hoyt*, 232 F.3d 1031, 1036 (9th Cir.2000), we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision, *SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Thus, if the Commissioner's contention invites this Court to affirm the denial of benefits on a ground not invoked by the

disability determination. The regulations point in contradictory directions on this question. *Compare* SSR 96-8P ("Work related mental activities generally required by competitive, remunerative work include the abilities to: understand [and] carry out ... instructions; ...; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting") *and* § 404.1564(b)(5) and 416.964(b)(5) ("Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language") *and* SSR 82-61 ("Congress has ... expressed the intent that disability determination be carried out in as realistic a manner as possible") *with* 20 C.F.R. §§ 416.960(c) and 404.1560(c) (stating that education will not normally be considered until step five of a disability proceeding) *and* 20 C.F.R. §§ 404.1564(b) and 416.964(b) ("The term 'education' also includes how well you are able to communicate in English since this ability is often acquired or improved by education"). *See also* 20 C.F.R. 404.1564(b)(5) and 416.964(b)(5) ("Since the ability to speak, read and understand English is generally learned or increased at school we *may* consider this an educational factor") (emphasis added). It is sufficient for our analysis that the ALJ clearly did take Pinto's illiteracy into account and presented it in his hypothetical to the vocational expert. Whether this demonstrated a conflation of steps four and five of the disability determination process or an appropriate "realistic" assessment of Pinto's residual functional capacity, the issue should be addressed upon remand.

Commissioner in denying the benefits originally, then we must decline.

The Commissioner adopted the findings of the ALJ. Because the ALJ *did* in fact refer to Pinto's limited language abilities at step four, the Commissioner's argument on appeal that language abilities should *not* be considered at step four strikes us as a new ground for the Commissioner's decision. We therefore refuse to reach this issue. On remand, the ALJ should clarify (1) whether his step four determination was based on Pinto's past relevant work as actually performed or as generally performed, and (2) how Pinto's language skills factor into the disability determination.

V

The administrative record fails to show that Pinto can continue to do her past relevant work either as usually or as generally performed. We REMAND this case to the district court with directions to further remand this case to the Commissioner.