Susana PEREZ, Plaintiff—Appellant,

v.

Michael J. ASTRUE,* Commissioner of Social Security, Defendant—Appellee.

No. 05–56762.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 6, 2007.**

Filed Sept. 10, 2007.

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

** The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

Andrew T. Koenig, Esq., Attorney at Law, Ventura, CA, for Plaintiff–Appellant.

Geralyn A. Gulseth, Esq., SSA–Social Security Administration, Office of the General Counsel, San Francisco, CA, for Defendant–Appellee.

Before: BERZON and IKUTA, Circuit Judges, and SINGLETON ***, Senior District Judge.

### MEMORANDUM.****

Susana Perez ("Perez") applied for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. Perez's application was denied at all levels of the administrative process and by the district court.[1] This Court has jurisdiction under 28 U.S.C. § 1291 to review the decision below.

■ The administrative law judge ("ALJ") determined that Perez's mental impairment was not severe ("mild difficulties in social functioning"). This finding was supported by substantial evidence in the record. In evaluating the alleged mental impairment, the ALJ relied more heavily upon the opinions of examining psychiatrist, Dr. Paculdo, and of non-examining psychiatrist, Dr. Pasricha, than on those of treating family practice physician, Dr. Perez, and of consulting orthopedist, Dr. Grogan. The ALJ set forth specific, legitimate reasons for doing so. *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir.2002).

■ As to Perez's claimed physical impairments, the ALJ determined that Perez could perform her past relevant work and is, therefore, not disabled. A claimant is not disabled under the Social Security Act if she can perform her past relevant work either as she actually performed it, or as the work is ordinarily performed in the national economy. SSR 82–61. In concluding that Perez could perform her past relevant work, the ALJ considered vocational expert ("VE") testimony in conjunction with other substantial evidence in the record, including the Dictionary of Occupational Titles and Perez's Disability Report and Work History Report in which she described her sales job. *See Pinto v. Massanari,* 249 F.3d 840, 845 (9th Cir.2001) (VE testimony is not the sole source of evidence in making step four determination). The ALJ's findings regarding Perez's residual functional capacity flowed from a detailed credibility determination, which was supported by substantial evidence. Thus, the ALJ's job descriptions were sufficiently detailed. *See Tonapetyan v. Halter,* 242 F.3d 1144, 1147 (9th Cir.2001). Moreover, because the VE testified that a demonstrator job, as defined by the Dictionary of Occupational Titles, was light work that could be performed without overhead reaching, the ALJ's mistaken quotation of the VE's testimony did not affect the ALJ's determination. *See*

---

*** The Honorable James K. Singleton, Senior United States District Judge for the District of Alaska, sitting by designation.

**** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. The parties consented to a hearing before a United States Magistrate Judge.

*Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir.2005).

▆ The ALJ gave specific, legitimate reasons for crediting the opinions of consulting orthopedist Dr. Tom over those of Drs. Perez and Grogan, which reasons were supported by substantial evidence. *See Thomas,* 278 F.3d at 957. A review of the record in this case, as well as of the ALJ's written findings and decision, reveal that the ALJ satisfactorily met her burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Id.* (quotation marks omitted). The ALJ's findings regarding the medical evidence presented in this case should not be disturbed.

▆ The ALJ did not err in discounting Perez's claimed inability to speak English. The ALJ made factual findings based on her direct observation of Perez at the hearing and on other evidence in the record, and concluded that Perez had "a greater ability to communicate in English than [Perez] admitted at the hearing." This case is not like *Pinto,* on which Perez relies, because the ALJ here did not make a factual finding that Perez was illiterate in English. *See Pinto,* 249 F.3d at 843 n. 1. Moreover, Perez's claimed inability to speak English is tangential to Perez's disability claim, which is based on pain and depression, not on language difficulties. *Id.* at 847 n. 5.

▆ Finally, the ALJ's credibility determination was proper. The ALJ, used "ordinary techniques of credibility evaluation" and gave "specific, clear and convincing reason[s]" supported by substantial evidence for the determination. *Id.* at 960 (quotation marks omitted). The ALJ also noted that Perez failed to seek treatment. *See Burch,* 400 F.3d at 681. The ALJ discounted Perez's claim that she could not afford treatment because Perez found money to pay Dr. Grogan for the purposes of finding her disabled. The ALJ also noted that Perez was given conservative treatment even when she did see a doctor. Moreover, the ALJ noted other factors going toward the credibility determination including: Perez's medical records did not support her claims of severe medication side-effects; Perez was inconsistent about her ability to communicate in English and in her reports about her past relevant work; and a psychiatrist had stated that Perez appeared to exaggerate her symptoms. The dissent concludes it was improper to consider Perez's failure to seek treatment in this case because Perez testified that she could not afford treatment. The dissent also suggests a different way of viewing the record evidence on which the ALJ based her credibility decision. However, " '[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation,' " *Burch,* 400 F.3d at 680–81 (quoting *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989)); "we may not engage in second-guessing," *Thomas,* 278 F.3d at 959. Therefore, we do not disturb the ALJ's credibility determination here.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting:

I respectfully dissent.

The ALJ's credibility determination was, in my view, improper. That determination was critical in this case, as Perez's subjective report of incapacitating pain and depression is at the heart of her disability claim. Specifically, the ALJ largely discounted Perez's testimony because she had not aggressively sought treatment, but the reason she had not done so was her inability to afford treatment. Denying benefits because Perez was too poor to secure treatment for her pain is improper.

## A.

The ALJ provided eight justifications, three of which are directly related to Perez's treatment decisions, for discrediting Perez's subjective reports of pain. On the surface, the reasons concerning medical treatment appear to be inconsistencies. "Ordinary techniques of credibility evaluation," including identification of inconsistencies, may be applied at disability hearings. *Fair v. Bowen*, 885 F.2d 597, 604 n. 5 (9th Cir.1989). Patients complaining of pain who do not have an adequate explanation for not seeking treatment may be found not credible. *Id.* at 604; *see Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

But in this case, Perez did provide an adequate and long-accepted explanation: She could not afford treatment.

True, "[o]ur case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir.2007). Still, "disability benefits may not be denied because of the claimant's failure to obtain treatment [he or she] cannot obtain for lack of funds." *Id.* at 638 (quoting *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir.1995)); *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir.1999).

Here Perez repeatedly explained her dire financial circumstances. Her family doctor, presently her only source of treatment, had been "giving me sample pills because I don't have the money to buy the pills." Unable to afford basic pain medication, she had not, of course, sought other therapy because "we don't have the money." She was unable to make effective use of the county's free clinic because she found it too painful to be "standing or sitting for too long" in their long lines.

And she has been unable to get follow-up X-rays, as one of her examining physicians recommended, because "they're too expensive." None of this is surprising: Perez has not worked since 2001 (and, in that year, made only $7,288 according to her tax records).

Perez's case is thus closely analogous to that of the claimants in *Orn*, 495 F.3d at 638–39, *Regennitter*, 166 F.3d at 1296–97, and *Gamble*, 68 F.3d at 320, who simply could not afford treatment, despite crippling pain. It is particularly troubling that her failure to pursue aggressive, expensive, psychiatric treatment for depression was held against her. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter*, 166 F.3d at 1297 n. 1 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (alteration in original)). Perez, in fact, did testify that she had received sleeping pills from a "psychologist or psychiatrist," but hadn't "been able" to return to him. Assailing a depressed individual, as the ALJ did, for a "lack of motivation" is particularly inappropriate.

Finally, to characterize Perez's expenditure on one set of diagnostic X-rays, which her case-worker had recommended she procure to secure disability benefits, as inconsistent with her claim that she was too poor to secure the regular treatment she says she needs is a Catch–22. It is perfectly sensible to make such a choice regarding the use of limited financial resources in the hope of securing long term financial aid, so that one will then be more able to afford medical care for the future.

Thus, the core of the ALJ's credibility finding rested on very shaky ground.

## B.

The remainder of the ALJ's reasons for not believing Perez's pain testimony,

standing on its own, are either legally irrelevant or not supported by substantial evidence.

That the degree of Perez's subjective complaints were not corroborated by the objective clinical findings in the ALJ's view was of no legal moment because pain is inherently an individual phenomenon. "[A]n ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. Perez was not required to "show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need[ed] only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). No one disputes that Perez's injuries could cause some degree of pain, which is all that she had to show. With this showing, the ALJ could "reject [Perez's] testimony regarding the severity of her symptoms only if [she] ma[de] specific findings stating clear and convincing reasons to do so." *Id.* at 1284.

The examining psychiatrist's unsupported note that Perez exaggerated her symptoms is immaterial. The sentence the ALJ fixes upon followed a brief physical description of Perez as "ambulatory with no abnormal gait" or "involuntary movements" and appears to refer to her physical injuries, which were not in the psychiatrist's purview. Nor does the psychiatrist provide any evidence to contradict the evidence of substantial back and shoulder injuries that the examining doctors documented and, in fact, the psychiatrist begins the note by stating that "[n]o medical records were received for review."

It is not clear why the ALJ felt that Perez was inconsistent about her ability to communicate in English: she used a translator at her hearing and her medical examinations also required translators. She did submit a hand-written form in English to apply for disability benefits, but it is far from clear who filled out the form—it may well have been her case-worker. As for her work history, it seems clear that Perez has worked many jobs over the years. There is no reason to think that she could not have held all of the positions that she mentions.

As to the issue of Perez's side effects, those which she actually complained of at the hearing were bouts of dizziness that manifested shortly after she took medication, for ten or fifteen minutes. It is not particularly surprising that these dizzy spells were not noted in her medical records.

In sum, then, the ALJ noted a few dubiously-supported quibbles with Perez's general testimony in addition to the core credibility complaint—that this unemployed woman was not seeking expensive treatment. This reasoning was not permissible under our law. Because this error strikes directly at the ALJ's assessment of Perez's central complaint of excruciating pain, it undermines the ruling as a whole.

I would remand this case to the ALJ for a new determination, taking Perez to be credible. I respectfully dissent.