NOT FOR PUBLICATION
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

APR 23 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CHRISTOPHER BURNS, | No. 15-35609 |
| Plaintiff-Appellant, | D.C. No. 3:14-cv-00789-HZ |
| v. | MEMORANDUM[*] |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Submitted October 4, 2017[**]
San Francisco, California

Before: PAEZ and BEA, Circuit Judges; LAMBERTH,[***] District Judge

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Royce C. Lamberth, Senior United States District Judge for the District of Columbia, sitting by designation.

Christopher Andre Burns suffered an assault to the head on February 19, 2007, resulting in a fractured skull and a brain injury. Burns alleges that the assault caused him to suffer disabling headaches and cognitive impairment, and applied for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on April 5, 2007. After a hearing before an Administrative Law Judge (ALJ) in November 2009, Burns was found not to have been disabled on March 9, 2010. Burns appealed, and the parties stipulated to remand for further administrative proceedings after Burns filed an action in the District of Oregon. A second administrative hearing was held in July 2013 before ALJ Riley Atkins, who found that Burns's condition deteriorated over time, such that Burns became disabled as of January 1, 2011—not as of February 19, 2007, Burns's alleged date of onset. Burns was awarded SSI beginning January 1, 2011, but was denied DIB because the date for which he was last insured for DIB was March 31, 2009.

Burns timely appealed to the Appeals Council, which denied his request for review. He then appealed to the district court, which upheld the ALJ's decision. We review the district court's decision *de novo*, *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), and "therefore must independently determine whether the Commissioner's decision (1) is free of legal error and (2) is supported by substantial evidence." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). We reverse in part, affirm in part, and remand for further administrative proceedings.

The ALJ was presented with several medical opinions, including three opinions provided by Dr. Kimberly Goslin, Burns's treating neurologist, and the opinions of consultative examiners Dr. Donna Wicher, Ph.D, Dr. Marc Stuckey, Psy.D, and Dr. Tatsuro Ogisu, M.D. On February 11, 2009, while Burns was still covered for DIB, Dr. Goslin opined that "[b]ecause of the severity and continual nature of his headaches, [Burns] is not able to maintain secure, gainful employment [and] requires frequent resting throughout the day and care by his mother." The ALJ assigned "little weight" to Dr. Goslin's 2009 opinion because "objective testing from Dr. Wicher and Dr. Stuckey showed significant improvement in cognitive functioning."

The ALJ did not provide further reasons for rejecting Dr. Goslin's 2009 opinion. However, Dr. Stuckey's and Dr. Wicher's opinions that Burns's cognitive functioning improved does not contradict Dr. Goslin's opinion that Burns suffers from disabling pain. While Dr. Ogisu's independent clinical testing may contradict Dr. Goslin's conclusion that Burns's headaches were disabling, the ALJ did not cite to Dr. Ogisu's opinion as a reason to reject Dr. Goslin's 2009 opinion, nor did the ALJ resolve any conflict between Dr. Ogisu's opinion and Dr. Goslin's opinion. *See Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ therefore failed to provide a legitimate reason to reject Dr. Goslin's 2009 opinion.

The ALJ's rejection of Dr. Goslin's 2011 opinion was similarly erroneous. Although Dr. Goslin's 2011 opinion postdated Burns's date last insured for DIB benefits, it opined that Burns had been disabled since his injury in 2007, and therefore must be considered in analyzing whether Burns was disabled as of his alleged onset date in 2007. The ALJ rejected the 2011 opinion by stating that "Dr. McDevitt's [the testifying *non*-examining medical expert] testimony explained why the claimant's headaches apparently did not resolve…" Dr. McDevitt did not contradict Dr. Goslin's opinion on the existence or severity of Burns' headache pain, nor on its disabling impact. Neither was Dr. McDevitt's opinion based on independent clinical testing. We have consistently held that "the opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). Rather, "the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons." *Andrews*, 53 F.3d at 1041. Further, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Id.*

The ALJ thus erred as a matter of law in rejecting Dr. Goslin's 2011 opinion solely on the basis of testimony from Dr. McDevitt, a non-treating and non-examining physician. Further, the ALJ failed to consider the factors outlined in 20 C.F.R. § 404.1527(c)(2)-(6) in assessing the opinions of Dr. Goslin as Burns's treating physician, a failure we recently described as "reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017).

On remand, the ALJ will not be required to take Dr. Goslin's opinions as true. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014). Rather, the ALJ must consider the opinions together with any other evidence. If the ALJ continues to give the opinion "little weight," the ALJ must provide "specific and legitimate" reasons for so doing. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.*

The ALJ also found Burns's testimony "not entirely credible" as to the intensity, persistence, and limiting effects of his symptoms. The ALJ's credibility finding is supported by substantial evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Burns inaccurately reported some of his symptoms to his examining physicians and gave less than full effort during at least one exam, and Burns's activities of daily living from prior to 2011 show far fewer limitations

than he related in his testimony. At his 2009 ALJ hearing, Burns testified that any stooping caused his pain to reach a ten out of ten level and would likely cause him to fall over; that he needed to hold on to another person in order to support himself while walking; and that he could sit for only twenty minutes before needing to lay down. He also testified that medication had no effect on his pain. In contrast, Burns reported to Dr. Wicher in August 2007 that he walks approximately a mile and a half per day, does yard work, and does crossword puzzles to keep his mind active. Burns reported to another doctor, Dr. Carol Humphrey, in October 2010 that he walks 1 to 2 miles three times per week. In an Activities of Daily Living form dated May 3, 2007, Burns reported that he walks every day for a mile to a mile and a half, stated that his medications "relieve[] [his] symptoms," and did not report that headaches interfere with his ability to work. Dr. Ogisu, whose opinion the ALJ assigned great weight, noted that Burns "does not use any assistive device for ambulation" and opined that Burns does not require one. Dr. Ogisu also opined that Burns had no restriction in sitting. Dr. Goslin, Burns's treating physician, found that Burns could occasionally stoop. The ALJ's credibility finding is therefore supported by substantial evidence in the record.[1]

---

[1] The dissent is incorrect that we rely on grounds on which the ALJ did not as to the evidence of Burns's daily activities. The ALJ specifically noted that, for example, Dr. Wicher "listed mild restriction on daily activities." That "mild

Finally, the ALJ afforded little weight to the testimony of Judi Sutton, Burns's mother, due to contradictory medical evidence. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v.* Apfel, 236 F.3d 503, 511 (9th Cir. 2001). Contradictory medical evidence is not a germane reason to reject lay witness testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017). Such error may be harmless if the ALJ's well-supported reasons for rejecting a claimant's testimony also apply to the witness's testimony and the witness did not describe any limitations beyond those the claimant described. *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). However, Sutton attested to a number of

---

restriction" was based on Burns's statement *to Dr. Wicher* that he walks approximately a mile and a half. The ALJ similarly noted that Dr. Ogisu had found that Burns could "move without difficulty" and could "stand and walk a total of six hours in an eight-hour day." It is clear from the ALJ's decision that he relied on Dr. Ogisu's opinion and assigned it great weight. It is reasonable to infer that in crediting Dr. Ogisu's opinion that Burns could "stand and walk a total of six hours in an eight hour day," the ALJ also considered Dr. Ogisu's having opined that Burns does not require any assistive device for ambulation. The ALJ also ruled that the evidence demonstrates that Burns's condition had improved significantly after his injury. Burns's own statement that medication "relieves his symptoms" supports the ALJ's inference that the evidence in the record demonstrates such improvement. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.")

limitations beyond those reported by Burns himself, including that Burns would forget what he watched on television, needed to be reminded to bathe, that Sutton needed to dispense Burns's medications, and that Burns was unable to accomplish kitchen cleanup because he was unable to load the dishwasher. The ALJ's rejection of Sutton's testimony on the basis of contradictory medical evidence was therefore error.

Because the record as a whole contains ambiguities and important factual issues have not been resolved, we remand for further administrative proceedings. *Treichler*, 775 F.3d at 1105 ("Where, as in this case, an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.")

**Reversed in part, affirmed in part, and remanded.**

*Burns v. Berryhill*, No. 15-35609

PAEZ, Circuit Judge, dissenting in part, concurring in part, and concurring in the judgment:

I agree with the majority that the ALJ committed reversible legal error in rejecting Dr. Goslin's opinions and the testimony of Judi Sutton, Burns's mother. I write separately because the majority improperly affirms the ALJ's rejection of Burns's testimony.

It is a bedrock principle of administrative law that "we cannot affirm an agency on a ground that the agency did not invoke in making its decision." *Pinto v. Massanari*, 249 F.3d 840, 847–48 (9th Cir. 2001) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). But in affirming the ALJ's decision to discredit Burns's testimony, the majority does exactly that—and further compounds the error by finding inconsistencies where none exist. The ALJ found Burns "not entirely credible" for two reasons: 1) "minimal" treatment between 2007 and 2009,[1] and 2) that Burns's "daily activities show fewer limitations than alleged." The ALJ then elaborated on this second reason, writing:

> In 2007, the claimant would use the computer for a job search. In 2008, he test drove a car. He could vacuum, watch television, play video games, build models, and microwave food. He testified that he would do the dishes, do the laundry, and mow the lawn, though he does these activities quickly

---

[1] The majority does not affirm the ALJ's credibility determination on this ground. This is understandable, as Burns's treatment frequency ranged from every few weeks to every few months.

1

(before the headache pain increases). The claimant said he could cook, clean, and maintain hygiene.

Notably, the ALJ's decision did not list such activities as "examples" of Burns's allegedly-inconsistent daily activities. In my view, the daily activities listed by the ALJ are inadequate to support an adverse credibility finding, *see, e.g.*, *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014), and the majority does not affirm the ALJ's credibility determination based on the activities listed by the ALJ. Instead, the majority provides its own reasoning for why, in its view, Burns's daily activities were inconsistent with his stated limitations:

> At his 2009 ALJ hearing, Burns testified that any stooping caused his pain to reach a ten out of ten level and would likely cause him to fall over; that he needed to hold on to another person in order to support himself while walking; and that he could sit for only twenty minutes before needing to lay down. . . . In contrast, Burns reported to Dr. Wicher in August 2007 that he walks approximately a mile and a half per day, does yard work, and does crossword puzzles to keep his mind active. Burns reported to another doctor, Dr. Carol Humphrey, in October 2010 that he walks 1 to 2 miles three times per week. In an Activities of Daily Living form dated May 3, 2007, Burns reported that he walks every day for a mile to a mile and a half . . . . Dr. Ogisu, whose opinion the ALJ assigned great weight, noted that Burns "does not use any assistive device for ambulation" and opined that Burns does not require one. Dr. Ogisu also opined that Burns had no restriction in sitting. Dr. Goslin, Burns's treating physician, found that Burns could occasionally stoop.

In so doing, the majority affirms the ALJ on grounds on which the ALJ did not rely—something our precedent clearly forbids. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("Perhaps recognizing the flaw in the ALJ's reasoning about vacuuming, the government declines to mention vacuuming.

2

Instead, the government identifies *other* alleged inconsistencies between Claimant's hearing testimony and her reported daily activities, such as knitting and lace work. But the ALJ did not identify those inconsistencies. We are constrained to review the reasons the ALJ asserts. Our decisions make clear that we may not take a general finding—an unspecified conflict between Claimant's testimony about daily activities and her reports to doctors—and comb the administrative record to find specific conflicts." (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)) (internal quotation marks omitted).

Moreover, the majority suggests inconsistencies where a closer reading of the record reveals none. For example, the majority cites to Burns's statement to Dr. Wicher in 2007 that he does yard work as an example of an alleged inconsistency with his testimony, but Burns testified in his hearing that he mows the lawn—but mows it only once a week for about 20 minutes, and that afterward, his headache goes to a ten out of ten and that he has to lay down and drink water right afterward.[2] His testimony was not inconsistent with what he told Dr. Wicher, nor is it inconsistent with his alleged limitations. "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably

---

[2] Judi Sutton, Burns's mother, further explained that every two weeks, Burns can "sit and pull weeds only"—thus explaining how Burns is able to do yard work without stooping.

preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. As for Burns' allegedly inconsistent testimony regarding the need to have his mother or another person around for support while walking, the record demonstrates that Burns takes his 1-2 mile walks *with his mother*, not alone.

The majority also states that Burns "gave less than full effort during at least one exam," citing to Dr. Stuckey's 2008 evaluation. But Dr. Stuckey's report says nothing of the sort—only that Dr. Stuckey had "concerns" about his "psychological insight and thusly his self-report." Indeed, Dr. Stuckey described the test results as a "relatively valid appraisal of his current neuropsychological functioning." And while the section of the ALJ's decision that evaluated the medical opinions referenced a notation by Dr. Wicher stating that there was a "possibility" of variable effort due to Burns's inconsistent results on memory testing (although the ALJ incorrectly characterized Dr. Wicher's report as containing a "finding of poor effort"), our precedent precludes us from relying on this reason in evaluating the ALJ's credibility determination. *See Trevizo v. Berryhill*, 871 F.3d 664, 682, n.10 (9th Cir. 2017) ("Because the discussion of those issues is not in the section of the ALJ's decision addressing [the] symptom testimony, they are not properly considered credibility findings.").

4

The majority provides three other reasons[3] for affirming the ALJ's rejection of Burns's testimony. None of the three are even remotely connected to the ALJ's provided reasons, and thus cannot be grounds for affirming the agency as a matter of law. *Pinto*, 249 F.3d at 847–48. We have consistently held that the "clear and convincing" standard for rejecting a claimant's symptom testimony is the "most demanding required in Social Security cases," *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002), and that it is "not an easy requirement to meet," *Garrison*, 759 F.3d at 1015. The ALJ committed reversible error by failing to meet that "most demanding" standard here.

For all of the above reasons, I respectfully dissent in part.

---

[3] The majority states that 1) "Burns inaccurately reported some of his symptoms to his examining physicians"; 2) "stated that his medications 'relieve[] [his] symptoms'" in his May 2007 state disability application, whereas he testified in 2009 that medication did not alleviate his pain; and 3) did not report that headaches interfere with his ability to work in his initial state disability application.

5