NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 25 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

LAWRENCE J. COOK,

      Plaintiff-Appellant,

  v.

ANDREW M. SAUL, Commissioner of
Social Security

      Defendant-Appellee.

No. 18-35957

D.C. No. 3:17-cv-05660-JRC

MEMORANDUM*

Appeal from the United States District Court
for the Western District of Washington
J. Richard Creatura, Magistrate Judge, Presiding

Submitted September 1, 2020**
Seattle, Washington

Before: BYBEE and COLLINS, Circuit Judges, and STEARNS,*** District Judge.

Lawrence Cook appeals from the district court's order affirming the decision

of the Commissioner of Social Security denying his claim for disability insurance

benefits under the Social Security Act.  Reviewing for substantial evidence, *Revels*

*v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017), we affirm.

---

* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

** The panel unanimously concludes that this case is suitable for decision without
oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

*** The Honorable Richard G. Stearns, United States District Judge for the District
of Massachusetts, sitting by designation.

1.  We reject Cook's challenge to the evaluation of his medical record by the Administrative Law Judge ("ALJ").

a.  The ALJ gave little weight to the opinion of Dr. Cooke, who was Cook's treating physician.  Where, as here, the medical evidence was in conflict, our caselaw requires that the ALJ provide "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted).  We conclude that the ALJ properly met "'this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted).

Although Dr. Cooke opined that Cook's "cognitive difficulties" would prevent him from working, the ALJ observed that Dr. Cooke's treatment notes did not indicate that he performed any mental status examinations or made any other objective findings.  By contrast, Dr. van Dam conducted several diagnostic tests and concluded that, while there might be "some mild cognitive deterioration," Cook "would appear to continue to have good competencies despite the three prior strokes."  Dr. van Dam stated that, in her view, Cook "would be capable of employment," although she also noted that she had no basis to evaluate "whether he could manage an eight hour day."  Dr. Meharg performed a battery of

neuropsychological tests on Cook and produced a detailed report which concluded that Cook's test results "represent[ed] a mixed set of largely normal scores" with only "a few areas of mild abnormality."  Cook contends that the ALJ should have weighed this evidence differently by finding that Dr. van Dam's and Dr. Meharg's evaluations both demonstrated "severe" cognitive impairments.  However, we are not free to second-guess the ALJ's reasonable conclusion that these evaluations "show no more than mild limitations."  And the ALJ properly gave more weight to these opinions, which were supported by specific clinical findings, than to Dr. Cooke's more conclusory evaluation.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

The ALJ likewise reasonably analyzed the conflicting evidence with respect to Cook's physical limitations.  Dr. Cooke described Cook's left-side weakness as "marked," but the ALJ noted that this conclusion was not accompanied by any "objective examination findings."  The ALJ gave more weight to Dr. Leinenbach's detailed report, which concluded that Cook had only a "slight asymmetric relative decreased strength in the left arm and leg compared to the right," and that he nonetheless had full muscle strength in his "bilateral upper and lower extremities, including bilateral grips."  The ALJ's resolution of this conflicting evidence was

reasonable and supported by substantial evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).[1]

b.  For similar reasons, the ALJ also properly provided "germane reasons" for giving little weight to the opinions of a nurse practitioner, Nurse Markham. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  The ALJ noted that Nurse Markham's assertion that Cook had moderate social difficulties was not supported by other evidence in the record and was inconsistent with the psychological evaluations of Dr. van Dam and Dr. Meharg.  As to Nurse Markham's evaluation of Cook's physical limitations, the ALJ noted that the "treatment records do not show objective findings consistent with the degree of limitation she described in [Cook's] functioning."  This reasonable reading of the record is amply supported by substantial evidence.

c.  The ALJ permissibly evaluated the opinions of two non-examining state agency physicians, Dr. Robinson and Dr. Staley.

---

[1] We reject Cook's conclusory argument that the ALJ "fail[ed] to acknowledge that Dr. Leinenbach's findings support greater limitations than he described in his opinion."  The ALJ, in fact, stated that "the residual functional capacity described herein contains *further* limitations than those described by Dr. Leinenbach," (emphasis added).  Specifically, the ALJ found that Cook's "history of strokes and a right wrist fracture are consistent with occasional fingering and reaching" despite Dr. Leinenbach's finding that Cook's "bilateral upper extremities had intact grip, strength, sensation, and range of motion."

4

The ALJ gave "significant weight" to the report of Dr. Robinson, who opined that "[b]ased on [Cook's] facility in dealing with his everyday affairs, his performance on cognitive testing and excellent reasoning ability, along with his active life and social functioning, [Cook] is determined to have no greater than mild limitations" in concentration, persistence, or pace and "no social limits." The ALJ properly noted that these conclusions were consistent with the views of Dr. van Dam and Dr. Meharg and with Cook's "activities of daily living." With some exceptions, the ALJ likewise gave "significant weight" to Dr. Staley's evaluation of Cook's physical abilities and limitations, concluding that Dr. Staley's views were generally consistent with the "objective medical evidence" and with Cook's testimony concerning his daily activities. The major exception was that the ALJ rejected Dr. Staley's opinion that Cook required the use of a cane. The ALJ adequately explained his reasons for doing so, stating that Cook had told Dr. Leinenbach that he no longer needed a cane. The ALJ also noted that, even if Cook did need a cane, the vocational expert's testimony made clear that it would not affect whether he could perform his former employment.

Cook states that Dr. Robinson's and Dr. Staley's opinions should have been given less weight because they did not consider evidence after November 2014, and they did not specifically address the lay testimony. But the ALJ did consider these other sources, and, in light of the ALJ's permissible evaluation of those

5

materials (as explained elsewhere in this decision), the ALJ's assessment of Dr. Robinson's and Dr. Staley's views was reasonable. We therefore may not set it aside. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

2. The ALJ provided sufficiently "'specific, clear and convincing reasons'" for rejecting Cook's testimony concerning the severity of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation omitted). The ALJ concluded that Cook's claimed limitations were inconsistent with: (1) the objective medical evidence; (2) his acknowledged level of activity, including volunteer work and substantial computer use; and (3) the fact that he continued to work for several years after his last stroke until he was laid off. Collectively, these are valid reasons for discounting a claimant's testimony. *See Burch*, 400 F.3d at 680–81; *Batson*, 359 F.3d at 1196–97; *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). And these conclusions are each supported by substantial evidence in the record. Cook argues that the ALJ should have weighed the conflicting evidence differently, but once again "we may not substitute our judgment for that of the ALJ." *Batson*, 359 F.3d at 1196.

For similar reasons, we reject Cook's challenge to the ALJ's discounting of the lay evidence from Cook's friend and from his former coworker. Because the ALJ reasonably concluded that their statements conflicted with the findings of Dr. van Dam, Dr. Meharg, and Dr. Leinenbach, substantial evidence supports the

6

ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("[A]n ALJ may discount lay testimony [if] it conflicts with medical evidence.").

3. Cook's challenges to the ALJ's determination of his residual functional capacity, and to the hypotheticals posed to the vocational expert, are merely a recitation of his earlier criticisms of how the ALJ weighed the medical evidence. We therefore reject these challenges as well. *Bayliss*, 427 F.3d at 1217. We likewise reject Cook's claim that Dr. Meharg's conclusions precluded a finding that Cook had the reasoning and language skills required by his former employment as a nonprofit executive director. On this record, the ALJ could permissibly conclude that the limitations noted by Dr. Meharg did not establish that Cook lacked the reasoning and language skills to perform his prior job.

Cook contends, however, that we must remand the case because the ALJ failed to make specific findings as to "the physical and mental demands" of his past job, as required by Social Security Ruling 82-62. But Social Security Ruling 82-61 states that the "*Dictionary of Occupational Job Titles* (DOT) descriptions can be relied upon . . . to define the job as it is usually performed in the national economy," *see* 1982 WL 31387, at *2 (emphasis omitted), and here the ALJ accepted the vocational expert's testimony, which relied on the relevant DOT entry, in finding that Cook could perform his former job as generally performed in the national economy. Moreover, this is not a situation in which the DOT entry

7

was affirmatively inconsistent with Cook's "noted limitations" as found by the ALJ. *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001). Under these circumstances, we need not remand for a more detailed explanation. *Id*.

**AFFIRMED.**